IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PETER P.,[1]                                            No. 1:19-cv-01339-HZ

              Plaintiff,                          OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.


John E. Haapala Jr.
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

Katie Taylor
Harder, Wells, Baron & Manning, P.C.
474 Willamette Street
Eugene, OR 97401

        Attorneys for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Jeffrey R. McClain
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Peter P. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on February 10, 2015, alleging an onset date of January 17, 2015. Tr. 100.[2] Plaintiff's date last insured is March 31, 2022. Tr. 17. His application was denied initially and on reconsideration. Tr. 15.

      On January 19, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 15. On August 22, 2018, Plaintiff appeared, again with counsel, for a supplemental hearing before the same ALJ. Tr. 15. On September 19, 2018, the ALJ found Plaintiff not disabled. Tr. 27. The Appeals Council denied review. Tr. 1.

///

///

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

2 – OPINION & ORDER

## FACTUAL BACKGROUND

Plaintiff alleged disability based on "[t]remor in hands, degenerative disc disease, bulging disc in back, [and] sciatica." Tr. 272. At the time of his alleged onset date, he was 41 years old. Tr. 76. He completed school through the 12th grade, but he did not graduate. Tr. 26, 52–53, 273. He has past relevant work experience as a "Car Sales Person," "Car Driver," "Telephone Sales Representative," "Construction Worker," and "Automobile Parts Clerk." Tr. 25.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

3 – OPINION & ORDER

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if

not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the

claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the

Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity after his alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that

Plaintiff has the following severe impairments: "hand tremor, degenerative disc disease, and

somatic symptom disorder." Tr. 18. However, the ALJ determined that Plaintiff's impairments

did not meet or medically equal the severity of a listed impairment. Tr. 18. At step four, the ALJ

concluded that Plaintiff has the residual functional capacity to perform light work as defined in

20 C.F.R. § 404.1567(b) with the following limitations:

> [H]e is able to sit for one hour at a time, but will need to stand or walk, for no more
> than one minute, before sitting again. He can occasionally balance, kneel, stoop,
> crawl, and climb ramps or stairs. He can never climb ladders or ropes. He can
> occasional [sic] handle and feel with the bilateral upper extremities. He can have
> no exposure to extreme vibration, or hazards such as machinery or unprotected
> heights.

4 – OPINION & ORDER

Tr. 19. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past

relevant work. Tr. 25. But at step five, the ALJ found that there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, such as "Gate Guard," "Counter

Clerk," and "Furniture Rental Clerk." Tr. 26. Thus, the ALJ concluded that Plaintiff is not

disabled. Tr. 27.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision.

*Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is

susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."

*Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v.*

*Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either

a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal

quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom

testimony; (2) failing to include limitations related to Plaintiff's neurocognitive disorder; and (3)

improperly rejecting lay witness testimony from Plaintiff's wife. The Court disagrees.

### I.   Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: first, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the time of the hearing, Plaintiff worked part time as an auto parts clerk. Tr. 61–62, 71, 773. Plaintiff testified that he was unable to work more than 15 to 20 hours a week because of his back pain. Tr. 62–63. He also testified that he could not work for a similar employer. Tr. 44, 60–61. His employer at the time knew of his limitations and accommodated him by giving him a stool to sit on, assigning other employees to lift heavy things, and exempting him from tasks that required writing because his handwriting is illegible. Tr. 61–62. Plaintiff types the till into a spreadsheet instead of writing it by hand. Tr. 48. Plaintiff stated that there are days when he is in pain when he arrives at work, and it worsens with three to four hours standing at the counter, even when he alternates standing and sitting. Tr. 63. He testified that he cannot take his prescribed regimen of pain medications and safely drive a company vehicle to deliver parts or "do [his] job at the counter," so he spends most of his day in pain. Tr. 63. He later testified that he was "taken . . . out of delivery vehicles" because his pain medication makes him a liability, and that as a result his hours were being cut further. Tr. 44. Plaintiff also stated that he has to take four ten-minute breaks in a day and has missed one or two days of work per month because of his conditions and procedures to treat his back pain. Tr. 64. Plaintiff additionally testified to having poor memory. Tr. 61. He testified that he had trouble remembering what he was told within seconds at his previous job as a car salesman. Tr. 61. On September 12, 2018, Plaintiff, through counsel, informed the ALJ that he had been let go from his part-time job because "his supervisor reasoned that they [were] no longer able to accommodate him." Tr. 349.

In his function report and in his testimony at the hearing, Plaintiff described difficulties stemming from both his tremor and his back pain. Because of his tremor, Plaintiff has difficulty writing, typing, shaving, feeding himself, preparing meals, folding clothes, and loading the dishwasher. Tr. 65–66, 279–86. Stress makes his tremor worse. Tr. 285 His back pain prevents him from sitting or standing for long periods of time, limits his ability to lift, and requires him to rest after walking for twenty minutes. Tr. 61, 279, 284. Plaintiff lays down to treat his pain when he is at home. Tr. 63. He also has poor balance and difficulty sleeping. Tr. 68. Despite his conditions, Plaintiff is able to drive a car, and he goes shopping with his wife. Tr. 279–86. He is also able to manage his finances, though he cannot write checks because of his tremor. Tr. 283. He can no longer work on cars and instead watches TV and reads about them. Tr. 283. Plaintiff spends his free time visiting with friends and family but goes out less regularly than he used to. Tr. 283. Though he describes memory issues, he also stated that he does not need reminders, can follow instructions, and finishes what he starts. Tr. 284.

The ALJ provided the following reasons for rejecting Plaintiff's subjective symptom testimony: (1) Plaintiff's level of activity, including his part-time work and activities of daily living; (2) evidence of Plaintiff's tendency to magnify symptoms; and (3) the opinions of Plaintiff's providers along with the objective medical evidence. Tr. 20–22.

A.      Activities of Daily Living

The ALJ rejected Plaintiff's subjective symptom testimony because of his part-time work and activities of daily living. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work

skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d

625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting

to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as

grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433

F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In

order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's

claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and

documents in the record or take these out of context in order to reach his conclusion on the

claimant's credibility. *Id.* at 722–23.

The ALJ concluded that Plaintiff "is active to the point that it is reasonable that he could

perform a regular work schedule" with the limitations included in the RFC and that "[h]is

capabilities . . . far exceed [what] would be expected given his testimony of constant pain, or an

inability to lift." Tr. 21. The ALJ found that Plaintiff's ability to work full time was also

indicated by his activities of daily living, "which are performed on top of work 15 to 20 hours a

week." Tr. 21. The ALJ also determined that his activities "give little indication of an individual

in severe chronic pain, or who is essentially incapacitated after five hours of work." Tr. 22. The

ALJ cited Plaintiff's reports to medical providers that he felt great after a ten-day cruise and was

working on old cars, exercising, going out with family and friends, driving, using the internet,

using his off-road vehicles, and restoring a new home. Tr. 21–22. The ALJ specifically found

that Plaintiff's activities were not consistent with chronic severe back pain and "unexpected for

someone with [a] severe tremor in his dominant hand." Tr. 22.

9 – OPINION & ORDER

The ALJ's reasoning is supported by substantial evidence. Evidence that a Plaintiff's level of activity is higher than suggested by his claimed limitations can support an ALJ's determination to reject subjective symptom testimony. As noted by the ALJ, Plaintiff's activities are inconsistent with Plaintiff's subjective symptom reports related to both his back pain and his tremors. For example, while Plaintiff states that he has difficulty with tasks that require the use of his hands and experiences pain that precludes significant sitting, standing, lifting, and walking, he also reports using his off-road vehicles, working on old cars, and going to the gym. Tr. 436 (working out), 460 (reports returning to moderate workout routine), 445 (goes to gym twice a week), 482 (very physically active), 367, 524 (riding off-road vehicles), 596 (restoring home), 777 (tinkering on cars). He reported feeling great after a 10-day cruise to Mexico. Tr. 460. In addition, Plaintiff reported activities at home—including kitchen cleanup, housekeeping, laundry, grocery shopping, socializing, and managing household finances—which he is able to do in addition to working five hours a day for a total of fifteen to twenty hours a week. Tr. 279–86, 777. When taken together, Plaintiff's work activities and activities of daily living contradict both Plaintiff's reported limitations and his testimony at the hearing that he is unable to work full time. Accordingly, this was a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

B.      Tendency to Magnify Symptoms

The ALJ also found that evidence in the record suggested Plaintiff may magnify symptoms. Here, The ALJ relied solely on an opinion by consultative examiner Dr. Michael O'Connell, Ph.D., who completed a neuropsychological exam of Plaintiff. Tr. 772. Test results indicated Plaintiff had poor memory and processing speed. Tr. 780, 786. But Dr. O'Connell cast doubt on the accuracy of those results, observing that they seemed inconsistent with Plaintiff's

presentation during their interview as well as his current lifestyle, including maintaining a part-time job. Tr. 777, 788 ("It was difficult to assess this gentleman's effort."). Dr. O'Connell noted that because of those inconsistencies, it would be "chancy" to conclude the cognitive testing results accurately reflect Plaintiff's capacities at the time. Tr. 788.

This opinion does not represent substantial evidence of a tendency to magnify symptoms and was thus not a clear and convincing reason to reject Plaintiff's testimony. Evidence of a tendency to exaggerate may support a decision to reject a plaintiff's subjective symptom testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In *Tonapetyan*, for example, the Ninth Circuit found that the ALJ reasonably rejected the plaintiff's testimony based on a tendency to exaggerate symptoms, illustrated by a provider's observation that the plaintiff "was uncooperative during cognitive testing but was 'much better' when giving reasons for being unable to work," and by inconsistencies in the record that undermined the plaintiff's testimony that she could not remember her address, telephone number, height, or weight. *Id.* Here, by contrast, the ALJ inferred a tendency to exaggerate solely from Dr. O'Connell's opinion regarding inconsistency in his test results. Tr. 22. But Dr. O'Connell did not conclusively attribute the questionable validity of the test results to any tendency to exaggerate. *See* Tr. 772–93; *see also* Tr. 777 ("It was difficult to assess this gentleman's effort."). Rather, Dr. O'Connell ultimately concluded that the available medical evidence showed Plaintiff was "capable of understanding and remembering basic workplace instructions," a conclusion that "does not appear consistent with [Plaintiff's] test performance" but "is, however, consistent with his current ability to maintain half-time employment . . . and his behavior and capacities demonstrated during the . . . clinical interview and mental status examination." Tr. 788. Dr. O'Connell acknowledged that "[i]t remains possible that the current test results are an accurate

reflection of [Plaintiff's] current cognitive capacities" but that he would consider such a conclusion to be "chancy" absent validity testing. Tr. 788. Dr. O'Connell's opinion suggests that his test results were inconclusive but does not support the ALJ's conclusion that that Plaintiff tends to exaggerate symptoms. *See Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1148 (D. Or. 2009) (distinguishing the case from *Tonapetyan* because the plaintiff "was cooperative during all of her examinations and the administrative process with no effort at deception"). Therefore, the ALJ erred in this finding.

C.      Medical Opinions & Objective Medical Evidence

The ALJ also found that medical opinions by multiple providers and objective medical evidence in the record contradict Plaintiff's testimony. The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Medical opinions that contradict a plaintiff's testimony regarding limitations may support an ALJ's decision to reject that testimony. *See Malkin v. Saul*, 818 F. App'x 738, 740 (9th Cir. 2020) ("[A] consensus of medical opinion that [the plaintiff] had only non-severe impairments could help provide a basis for discrediting her subjective symptom testimony.") (internal quotation marks omitted); *Rushing v. Astrue*, 360 F. App'x 781, 782 (9th Cir. 2009) ("[M]edical opinions offered by [the plaintiff's] doctors are inconsistent with [the plaintiff's] testimony regarding her inability to engage in ordinary physical activity."). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And under certain

12 – OPINION & ORDER

circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

First, the ALJ found that "several of those who have treated or evaluated [Plaintiff] find, despite the extent of [Plaintiff's] limitations as given in his testimony, such as the need to lie down, or complete inability to lift, that he is able to perform suitably restricted forms of full-time work." Tr. 20. The ALJ cited opinions by several different providers to support this conclusion. Tr. 20. Treating provider Tom Trubenbach, N.P., indicated Plaintiff had no limitations on standing, sitting, walking, or lifting. Tr. 851–53. Consultative examiner Dr. Daniel Selinger, M.D., determined that Plaintiff could stand for up to six hours a day, sit for up to six hours a day, and lift ten pounds frequently and up to twenty occasionally. Tr. 448–49. Dr. Selinger additionally opined that Plaintiff could occasionally climb stairs, stoop, crawl, kneel, and crouch, but that he should not use ladders, scaffolds, or heavy machinery due to his tremor. Tr. 448–49. He found no limitations on manipulative activities. Tr. 448. The ALJ also noted that some of Plaintiff's treating providers "assert limitations that would not necessarily rule out all forms of regular work." Tr. 20. For example, Dr. Oscar Sanchez, M.D., opined that whether Plaintiff's tremor affects his ability to work full-time "[d]epends on work tasks." Tr. 741. And Dr. Brett Quave, M.D. stated that chronic pain was impacting Plaintiff's quality of life and activities of

daily living. Tr. 492. He recommended Plaintiff "be considered at some level for disability," but did not specify any limitations. Tr. 492.

The ALJ did not err in concluding that the foregoing medical opinions contradicted Plaintiff's testimony as to his limitations. Dr. Trubenbach concluded that Plaintiff had no physical limitations, Tr. 851–53, and the specific limitations identified by Dr. Selinger, such as standing and sitting for up to six hours each per day and limited postural activities, are not inconsistent with full-time work, Tr. 448–49. And while the opinions of Dr. Sanchez and Dr. Quave both indicate that Plaintiff's conditions may affect his ability to work, they do not include specific limitations or indicate that he would be unable to work. Tr. 492, 741. These findings contradict Plaintiff's alleged limitations and Plaintiff's testimony that he cannot work full time.

Second, the ALJ highlighted the objective medical evidence. The ALJ determined that "[o]bjective findings are mixed at best[,]" while "[c]orrelating clinical signs are . . . wholly or mostly negative." Tr. 22. To support her conclusion, the ALJ summarized results from MRIs and electrodiagnostic testing along with some of Plaintiff's clinical signs. Tr. 22–23.

As to Plaintiff's low back pain, the ALJ's conclusion regarding the objective medical evidence is supported by substantial evidence. MRIs from 2014 through 2017 show mild scoliosis, mild disc bulges, possible mild foraminal stenosis, and mild degenerative changes in Plaintiff's lumbar spine. Tr. 419–20, 519, 807. Though the 2016 MRI showed that a disc protrusion was contacting the right S1 nerve root, Tr. 519, the disc protrusion had near completely resolved by the 2017 MRI, Tr. 807. In addition, correlating neurologic signs relating to motor strength, reflexes, gait, ambulation, and sensation appear negative throughout much of the record. *See, e.g.*, Tr. 354, 366, 391, 405–06, 411, 454, 464, 501, 805; *see also* Tr. 482 (notes mild difficulty with tandem gait, but not as severe as his subjective report).

As to Plaintiff's tremor and cervical spine, however, the ALJ's findings are not supported by substantial evidence. Imaging of Plaintiff's cervical spine showed reduced cervical lordosis, C5-6 disc protrusion, and C5-6 central canal and neural foraminal narrowing. Tr. 807. Electrodiagnostic studies from November 2017 found bilateral chronic C6 radiculopathy, paresthesia in the upper extremities, and significant tremor. Tr. 549–50. These findings do not represent substantial evidence because, unlike the lumbar imaging, they are not described as "mild," "minimal," or with any similar qualification of degree. Nor do they show any of Plaintiff's conditions improving. Plaintiff's tremor was also observable to numerous providers during examinations—most often with intention but occasionally also at rest—and reflected in tests administered by various providers. Tr. 379, 391, 409, 411, 448, 481, 505, 545, 744, 777. These errors, however, are harmless. Because the ALJ provided another clear and convincing reason on support of her finding, *see* Part I.A., the Court affirms the ALJ's decision to reject Plaintiff's subjective symptom testimony.

## II.    Failure to Include Limitations Related to Plaintiff's Neurocognitive Disorder

Plaintiff also argues the ALJ erred by failing to include in Plaintiff's limitations related to the "rule out mild neurocognitive disorder" diagnosis identified by consultative examiner Dr. Michael O'Connell, Ph.D. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician, *id*., and more weight is given to an examining physician than to a nonexamining physician, *see Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear

and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if

one physician is contradicted by another physician, the ALJ may not reject the opinion without

providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,*

495 F.3d at 632; *Widmark*, 454 F.3d at 1066. And "[t]he Commissioner may reject the opinion of

a non-examining physician by reference to specific evidence in the medical record." *Sousa v.*

*Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. O'Connell completed a neuropsychological evaluation of Plaintiff on February 20,

2017. Tr. 772. Cognitive testing administered by Dr. O'Connell showed a number of cognitive

deficiencies, including "borderline" IQ and perceptual reasoning; "extremely low" processing

speed; and "extremely low" visual memory, visual working memory, and delayed memory. Tr.

780, 786. However, as discussed above, Dr. O'Connell stated that Plaintiff's poor test results

"seemed inconsistent with his presentation during interview and his description of his current

lifestyle." Tr. 777. He also opined that "[Plaintiff] is capable of understanding and remembering

basic workplace instructions," which was "consistent with his current ability to maintain half-

time employment . . . and his behavior and capacities demonstrated during the course of clinical

interview and mental status examination." Tr. 788. Dr. O'Connell further determined that it

would be "chancy" to rely on the accuracy of the cognitive test results without validity testing,

and that Plaintiff would have no difficulties with simple instructions and decisions, and only

moderate difficulties in complex work-related matters despite "[t]esting of intellectual and

memory capacity suggest[ing] significant deficits in these areas that would appear limiting

enough to preclude [Plaintiff's] apparently successful performance at his current job." Tr. 788,

790. Dr. O'Connell diagnosed somatic symptom disorder and rule-out mild neurocognitive

disorder. Tr. 788.

The ALJ gave partial weight to Dr. O'Connell's findings and declined to include psychological limitations in Plaintiff's RFC. Tr. 24–25. In her decision, she recognized Dr. O'Connell's diagnosis of somatic symptom disorder while omitting his rule out diagnosis of mild neurocognitive disorder. Tr. 18, 24–25. The ALJ reasoned that greater weight was not appropriate because "any implication that [Plaintiff] has psychologically based limitations is not consistent with the extent of his activities as gleaned from the entire record." Tr. 25. The ALJ emphasized Dr. O'Connell's own opinions that relying on the accuracy of the cognitive testing would be "chancy" due to the inconsistency between the test results and Plaintiff's activities. Tr. 24, 25.

The ALJ did not err in declining to give more weight to cognitive test results. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02) (9th Cir. 1999)). Dr. O'Connell himself identified such an inconsistency, both with Plaintiff's reported activities and with his presentation and capacity during the exam. Tr. 787. [3] The ALJ thus could reasonably conclude that the cognitive limitations suggested by Plaintiff's poor testing scores should be given little weight and excluded from the RFC.[4]

---

[3] Plaintiff argues that Dr. O'Connell was unaware that Plaintiff's work was "highly accommodated," and that the test results were not inconsistent with Plaintiff's "actual work situation," which included accommodations. Pl.'s Br. 17. However, the accommodations described in Plaintiff's testimony and in a letter from a coworker by and large pertain to physical, not cognitive, limitations. Tr. 44, 345. As such, whether or not Dr. O'Connell took workplace accommodations into account would not seem to materially alter his conclusion that Plaintiff appears capable of working based on activities and presentation.

[4] It is unclear whether Plaintiff is arguing that the ALJ erred at step two of the sequential analysis in failing to find Plaintiff's neurocognitive impairment a severe impairment. Step two errors are harmless, however, as long as the ALJ properly considers the claimant's impairments at subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007);

17 – OPINION & ORDER

### III.    Lay Witness Testimony

Finally, Plaintiff argues that the ALJ erred by rejecting the lay witness testimony

provided by his wife, Angela P. "Lay testimony as to a claimant's symptoms or how an

impairment affects the claimant's ability to work is competent evidence that the ALJ must take

into account." *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must give reasons "germane

to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. The

ALJ is not required, however, "to discuss every witness's testimony on an individualized,

witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting

similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not

describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony,"

any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

The ALJ stated she considered and gave partial weight to "several third party

statements," citing two exhibits (16E and 17E) that do not include Angela's statement. Tr. 25. It

is unclear whether and to what extent the ALJ considered Angela's testimony because neither of

the exhibits cited is her statement. However, non-consideration of lay witness testimony is

harmless error where, as here, the ALJ has already provided adequate rationales to reject the

plaintiff's testimony and the rejected lay witness testimony does not describe any limitations

---

*Graybeal v. Astrue*, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D. Or. Nov. 2, 2011)
("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error,
however, if the ALJ resolves step two in the claimant's favor and properly considers limitations
imposed by the impairment at other steps of the sequential process."). Because the ALJ has
properly considered Plaintiff's neurocognitive impairment at subsequent steps of the sequential
analysis, any step two error here is harmless.

beyond those already validly rejected by the ALJ. *See Molina*, 674 F.3d at 1123. Angela's

testimony does not describe limitations not also reported by Plaintiff. Tr. 346 (describing

difficulties cooking, shaving, eating, writing, remembering, and doing household chores). Her

testimony was thus "inconsequential to the ultimate nondisability [sic] determination" and any

failure by the ALJ to adequately consider it was harmless. *Id.* (internal quotation marks and

citation omitted).

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED:___January 28, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER